[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12115
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:09-cv-00784-HTW

DANIEL L. BOMMER,

Plaintiff-Appellee,

versus

GEORGE REMINGTON REYNOLDS,
STEVEN S. GARELECK,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 26, 2012)

Before EDMONDSON, ANDERSON, and FARRIS,[*] Circuit Judges.

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

EDMONDSON, Circuit Judge:

This state-law case involves a dispute between former business partners about whether they made a contract. The parties formed a valid and enforceable contract; the District Court properly granted summary judgment in favor of Plaintiff.

## Background

Telesis Management Corporation, a telecommunications company founded by Plaintiff Bommer, merged with companies controlled by Defendants Reynolds and Gareleck. The merger formed Cost Management Group, Inc. ("CMG"). In consideration for the merger, Plaintiff received 600,000 shares of stock in CMG and, along with Defendants, became one of the three principal stockholders in CMG.

Plaintiff and Defendants entered into a Stockholder's Agreement ("the Agreement") for CMG. The Agreement contains a buy/sell provision. Under the buy/sell provision, any of CMG's principal stockholders may send a Special Purchase Notice ("SPN") to another principal stockholder and offer to buy the other stockholder's shares at a price and terms outlined in the SPN. The buy/sell

provision allows principal stockholders to "buy out" or to be "bought out" of the business relationship.

In short, under the terms of the Agreement, a principal stockholder who offers to buy the shares of another principal stockholder is to send an SPN outlining the purchase price and terms of the deal. The recipient stockholder has 90 days "either to accept the offer or, at his or her sole option, reject the offer and instead elect to buy all of the Offering Stockholder's shares of the Stock, for the Agreement Price and on the Agreement Terms."

Pursuant to the terms of the Agreement, only two potential outcomes exist following the issuance of an SPN: (1) the recipient-stockholder either sells his stock at the price set forth in the SPN, or (2) purchases the issuer-stockholder's stock at the price set forth in the SPN. The recipient of the SPN must act in one way or another, or else, after 90 days, the SPN-recipient-stockholder automatically does agree "to sell his or her shares of the Stock to the Offering Stockholder."

On 6 June 2008, Defendants sent Plaintiff an SPN notifying Plaintiff of their intent to purchase his shares for a total price of $1,920,000. The SPN states that of the $1.92 million, $1.728 million was payable immediately upon the close of the transaction. The remaining $192,000 was to be paid pursuant to a Promissory Note within a period of 2 years and subject to "Additional Terms" listed in the

SPN.  The "Additional Terms" included non-compete, non-solicitation, and disclosure-of-business-interest clauses.  About no competition, the additional terms included this paragraph:

> b. <u>Non-Competition Agreement</u>.  You shall execute a non-competition agreement which provides that for a period of two years from the Closing Date you will not directly or indirectly compete with the business of the Corporation by engaging in any business or enterprise that engages in telecommunication agency and resale services for telecommunications carriers anywhere within the United States.  The final terms of the non-competition agreement will be subject to review by each party's counsel and shall conform to the requirements of applicable law.

Plaintiff decided to sell his shares to Defendants instead of purchasing all of Defendants' shares.  Plaintiff wrote to Defendants on 4 September 2008 (within 90 days of the SPN), notifying them of his intention to sell his shares.  The letter states, "Pursuant to Section 10.1 of the Stockholder Agreement please accept this letter as my acceptance as a shareholder of the Special Purchase Notice dated June 6, 2008."  In the same letter, Plaintiff tenders his 600,000 shares, resigns as an officer and director of CMG, and asks for the $1.728 million to be wired to his bank account.  Plaintiff's cover letter makes no mention of the "Additional Terms," but the SPN -- which Plaintiff signed and accepted -- includes the

"Additional Terms" section.

Plaintiff claims the 4 September 2008 letter operates as an acceptance of the SPN, which creates a binding obligation on Defendants' part to pay him $1.728 million.

Briefly stated, Defendants say no contract was formed because between June 2008 and March 2009 each party sent many other offers and counteroffers and the negotiations never ceased. Defendants especially cite an 11 June 2008 letter from Plaintiff's lawyer as the first counteroffer which, Defendants say, terminated the SPN.[1]

Despite Defendants' contention that no contract to buy Plaintiff's stock exists, Defendants accepted Plaintiff's resignation, took his keys, and shut down his company e-mail and other forms of access. Defendants also received the tender of Plaintiff's stock; Defendants made no attempt to return the stock until after Plaintiff filed suit.

Plaintiff filed suit to compel payment of the $1.728 million plus interest. The District Court concluded that a binding contract to purchase shares was established between the parties pursuant to the Agreement and the SPN. The

---

[1] Plaintiffs also argue that the SPN is no proper offer because the terms are too uncertain, incomplete, and indefinite.

5

District Court granted summary judgment to Plaintiff and awarded $1.728 million plus interest. But the District Court declined to award the additional $192,000 claimed by Plaintiff, finding that Plaintiff never complied with the SPN's "Additional Terms." Defendants appeal.

## Discussion

General contract law applies to this case. Shareholder agreements "are construed according to the principles of the law of contracts." Simpson v. Pendergast, 659 S.E.2d 716, 719 (Ga. Ct. App. 2008) (quotations omitted). Georgia state contract law controls and instructs that a "definite offer and complete acceptance, for consideration, creates a binding contract." Fernandez v. WebSingularity, Inc., 681 S.E.2d 717, 721 (Ga. Ct. App. 2009) (quotations omitted).

Defendants chiefly argue that no contract was formed either because no proper offer was made or that if an offer was made, Plaintiff rejected it (by his counteroffers).

But the text of the SPN was clear enough: the SPN was an offer pursuant to the Agreement. Defendants even testified that in sending the SPN, Defendants

intended either to buy out Plaintiff or for Plaintiff to buy out Defendants. Defendants testified clearly about their goals (and desired outcome) of sending the SPN. The SPN represented a definite and valid offer.

Plaintiff accepted the terms of the SPN with his 4 September 2008 letter stating, "Pursuant to Section 10.1 of the Stockholder Agreement please accept this letter as my acceptance as a shareholder of the Special Purchase Notice dated June 6, 2008." Plaintiff also actually signed the special purchase notice of 6 June 2008, signing under an all caps phrase that said, "ACCEPTED AND AGREED TO."

Considering the Stockholders' Agreement, negotiations or talks that the parties engaged in after the 6 June 2008 issuance of the SPN and before the 4 September acceptance do not undermine the unambiguousness and completeness of Plaintiff's acceptance.[2] With his acceptance of 4 September, Plaintiff performed as fully as he then could: Plaintiff tendered his 600,000 shares, resigned as an officer and director of CMG, and asked for the $1.728 million to be wired to his bank account. Plaintiff sufficiently manifested his acceptance of the terms of the SPN.

Defendants especially draw our attention to the matter of no competition.

---

[2] For example, in an 11 June 2008 letter, Plaintiff's lawyer writes: "In addition, this letter shall not be construed as a rejection of the offer contained within the Special Purchase Notice[.]"

They focus on one sentence in particular: "The final terms of the non-competition agreement will be subject to review by each party's counsel and shall conform to the requirements of applicable law." But we observe that Plaintiff, by his acceptance, agreed that he would execute a non-competition agreement for a period of two years to bar his competition anywhere in the United States. We strongly doubt that Plaintiff was free to compete once he accepted the SPN.[3] Furthermore, although the SPN states that the "final terms of the non-competition agreement will be subject to review by each party's counsel and shall conform to the requirements of applicable law," we believe that the essential terms -- time, area and so on -- had already been agreed to in the SPN; formalities and details remained to be worked out. In addition, as we understand the law, the parties to a contract can agree to bind themselves by that contract to negotiate in good faith and to work out -- within an agreed framework -- some terms that remain open. Of course, Georgia law imposes an implied duty of good faith and fair dealing for all parties in contracts. The parties made an enforceable contract although it remained executory in part.

The SPN represented a valid and definite offer pursuant to the Agreement. Plaintiff's acceptance (for consideration) was total, complete, and definite. No

---

[3]We are not asked in this suit to enjoin Plaintiff from competing.

8

genuine issue of material fact exists about whether the parties formed a valid contract.  The District Court therefore correctly granted summary judgment in favor of Plaintiff.

AFFIRMED.

ANDERSON, Circuit Judge, dissenting.

Very respectfully, I dissent. In my judgment, the acceptance of the offer in this case was ambiguous with respect to whether he had accepted all material terms. The negotiations and course of dealing between the parties made clear that Bommer had not accepted all material terms, including in particular the term requiring a reasonable covenant not to compete. Because the offer was never accepted, there was no contract, and therefore I would have reversed the judgment of the district court.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 26, 2012

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 11-12115-DD
Case Style: Daniel Bommer v. George Reynolds, et al
District Court Docket No: 1:09-cv-00784-HTW

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellants.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tonya L. Richardson, DD at (404) 335-6176.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs